Ryan Andy SLAUGHTER, Appellant,

v.

STATE of Missouri, Respondent.

No. 16257.

Missouri Court of Appeals,
Southern District,
Division One.

March 7, 1990.

Gregory C. Wells, Columbia, for appellant.

William L. Webster, Atty. Gen., M. Melissa Manda, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Ryan Andy Slaughter (hereafter referred to as "appellant") was charged with and convicted of burglary in the first degree. § 569.160, RSMo 1986. Appellant pleaded guilty to the offense charged. This is an appeal from his Rule 24.035 motion for post-conviction relief. The trial court denied relief. This court affirms.

Appellant contends that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and in violation of Art. I, § 18(a), Missouri Constitution. Appellant claims that his trial counsel failed to "contact, interview, and call as witnesses" persons who would have provided a defense to the criminal charge. He states that he pleaded guilty rather than face a trial and substantial punishment with a "disinterested and unprepared attorney." Appellant asserts that his guilty plea was, therefore, involuntary.

This court's review of the dismissal of appellant's Rule 24.035 motion for post-conviction relief is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989); Rule 24.035(j).

Further, in view of the fact that appellant's criminal conviction is based upon a plea of guilty, any issue as to the effectiveness of counsel is relevant only for purposes of ascertaining whether the plea of guilty was made voluntarily. *McGinnis v. State*, 764 S.W.2d 653, 654 (Mo.App. 1988); *Gawne v. State*, 729 S.W.2d 497, 499 (Mo.App.1987). By pleading guilty movant waived all claims of ineffective assistance of counsel except to the extent they made the plea involuntary. *McGinnis, supra.*

Appellant, by this appeal, complains that his trial counsel failed to investigate circumstances of appellant's criminal case which would have provided a defense to the charge of first degree burglary. Appellant contends that his trial counsel was informed about the existence of certain witnesses, their whereabouts, and what their testimony would be, but that trial counsel failed to contact those persons in any way. Appellant contends that, as a result of the lack of action by his trial counsel, he was forced to plead guilty to avoid going to trial represented by an attorney who was not prepared to defend him and, therefore, that appellant's plea of guilty was not voluntarily made.

The acts which led to appellant's being charged with first degree burglary in the underlying criminal case included the fact that appellant was found inside the house in question. Appellant contends that his entry into the house was based upon a mistake. He claims that he was looking for a girlfriend who had invited him to her house. He did not know the correct address. However, appellant knew the neighborhood in which the girlfriend lived. He claims that he went to that neighborhood and asked certain individuals (who were unknown) if they knew where the girlfriend lived. Appellant claims that the people he asked gave him wrong information concerning the location of his girlfriend's house. He claims that he went to what he believed was the correct house, found the door to be open, and entered the house. He was discovered by an occupant of the house, Mrs. Dunaway. Mrs. Dunaway began yelling. Appellant stated that he was scared because Mrs. Dunaway appeared to be very upset. Appellant told Mrs. Dunaway that he was there to repossess a Kirby vacuum cleaner. She asked appellant if he had a card showing that he worked for the Kirby Vacuum Cleaner Company. He told her no, apologized, and left.

At the time of the evidentiary hearing, appellant did not recall the girlfriend's last

name. He did not know the location where he had obtained directions to what was supposed to be the girlfriend's house nor the name of anyone who had provided those directions.

Appellant's mother testified. She stated that before appellant pleaded guilty in the underlying criminal case, she had gone to the neighborhood where the house which appellant had entered was located. She testified that she inquired of people in that neighborhood and found the people who had given appellant the erroneous directions. Appellant's mother testified that she did not remember the names of those people. She stated that she knew where they lived. However, she gave no address during the course of her testimony.

Appellant's mother claimed that she had given the information that she had gathered to appellant's trial counsel prior to the time appellant pleaded guilty. Appellant's trial counsel, a public defender, testified that another public defender had represented appellant before him. The public defender testified that a significant amount of investigation had previously been done, of which he had benefit. He stated that he did not personally attempt to contact people who supposedly had given appellant wrong information as to the location of the girlfriend's house, but that an investigator for the public defender's office had talked to people in the general area. The public defender believed that the investigator had found someone who had talked with appellant on the day in question, but believed there was some question as to whether that person had given appellant erroneous information.

The trial court took judicial notice of the files in the underlying criminal case. Those files include a "Transcript of Proceedings" of the guilty plea hearing in appellant's criminal case. The following testimony was given by appellant at the guilty plea hearing:

Q. [By the court] Ryan, do you feel like you've had enough time to tell Mr. Robards all about your case?

A. Yes, I do, sir.

Q. Do you think that he's followed up on what everything you've told him to?

A. Yes.

Q. Is there anything you think your attorney should have done that is not done?

A. No, Your Honor.

Q. Is there anything you—that you've asked him to do which he hasn't done?

A. No.

Q. Are you satisfied with the job he's done?

A. Yes, Your Honor.

Q. In connection with today's hearing were you given any instruction except to tell the truth?

A. No, Your Honor.

.     .     .     .     .

Q. Do you understand, Mr. Slaughter, what the State's evidence—let me ask you this again, what the State's evidence would be against you?

A. Yes, I do, sir.

Q. Then again, do you feel that a jury would convict you on that—based upon that evidence?

A. Yes, Your Honor.

Q. Do you want me to accept your plea of guilty?

A. Yes, Your Honor.

.     .     .     .     .

Q. ... Has anyone made any kind of promise to you to get you to enter this plea of guilty except for this plea agreement?

A. No, Your Honor.

Q. Has anyone made any kind of threat or used any force to get you to plead guilty?

A. No, Your Honor.

Q. Are you entering this plea of your own free will?

A. Yes, Your Honor.

Q. Are you entering this plea because you are actually guilty of these—of this charge?

A. Yes, Your Honor.

Q. Do you understand everything we've done here today, sir?

A. Yes, Your Honor.

Q. Do you have any questions?

A. No, Your Honor.

Q. You still wish to enter a plea of guilty to this count?

A. Yes, Your Honor.

After appellant pleaded guilty in the criminal case, the court advised appellant of his right to file a motion to vacate, set aside, or correct the judgment or conviction or sentence in the criminal case as is required by Rule 29.07(b)(4). Appellant was once again asked about the representation his appointed counsel had provided. The questions asked and answers given include the following:

Q. [By the court] All right. Let me ask you a couple of questions about—what you think about the effective assistance of your counsel. I've already asked you previously some questions. This examination will also be on the record and under oath. It may be conducted if you so desire outside the presence of your attorney, Mr. Robards. You are reminded that you are under oath and you may request that your attorney remain. However, if you'll be more comfortable in answering my questions, because I'm going to ask you about his representation towards you, then I will ask Mr. Robards to step outside. Do you understand that?

A. Yes, Your Honor.

Q. Do you have any request you want to make of me?

A. No, Your Honor.

Q. Is it all right if Mr. Robards remains in the courtroom?

A. Yes, Your Honor.

Q. All right. Again, for the record your name is Randy Andy—Ryan Andy Slaughter; is that correct?

A. Yes, Your Honor.

Q. And you've just entered a plea of guilty to burglary in the first degree; is that correct?

A. Yes, Your Honor.

Q. You have just been sentenced to seven years in the Department of Corrections?

A. Yes, Your Honor.

Q. And your attorney is Mr. David Robards with the Public Defender's office?

A. Yes, Your Honor.

.   .   .   .   .

Q. Did you have sufficient opportunity to discuss this case with your attorney before this you entered a plea of guilty?

A. Yes, Your Honor.

Q. Did your attorney do the things you asked of him

A. Yes, sir.

Q. —to do prior to your entering your plea of guilty?

A. Yes, Your Honor.

Q. Did your attorney refrain from doing the things you asked him not to do prior to entering your plea of guilty?

A. Yes, Your Honor.

Q. Was your attorney assisted by another attorney?

A. Yes, Your Honor.

Q. Who was that?

A. Joe Zuzul.

Q. And that was previous to Mr. Robards entering this case; is that correct?

A. Yes, Your Honor.

Q. The sentence imposed upon you was a result of a plea agreement; is that correct?

A. Yes, Your Honor.

Q. Was the sentence you received what you expected to receive under the plea agreement?

A. Yes, Your Honor.

Q. Other than the plea agreement did your attorney communicate any threats, promises or anything else to induce you to enter your plea of guilty?

A. No, Your Honor.

Q. Are you satisfied with the services of Mr. Robards as your attorney?

A. Yes, Your Honor.

Following the extensive inquiry with respect to appellant's representation in the criminal case, that court announced that it found no probable cause of ineffective assistance of counsel and that a written finding to that effect would be placed on the docket sheet.

The trial court in this post-conviction proceeding had the record from the criminal case before it. It also had the opportunity to observe the witnesses who appeared at the evidentiary hearing on appellant's Rule 24.035 post-conviction motion and to exercise its responsibility to assess the credibility of those witnesses. *Darr v. State*, 723 S.W.2d 455, 457 (Mo.App.1986); *Leigh v. State*, 673 S.W.2d 788, 790 (Mo.App.1984). The trial court determined that appellant's plea of guilty in his criminal case was voluntarily made, and, therefore, that the performance of appellant's counsel in the underlying criminal case was not deficient. No abuse of discretion is shown with respect to that finding. *Darr, supra; State v. Bonds*, 521 S.W.2d 18, 20 (Mo.App.1975).

This court finds that the trial court's findings, conclusions and judgment are not clearly erroneous. The judgment is affirmed.

PREWITT and MAUS, JJ., concur.